UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BROOKE A. SUND,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN L. COLVIN, Acting<br>Commissioner of Social Security, [1]<br><br>　　　　　　　Defendant. | NO. C12-5877-MJP-JPD<br><br><br>REPORT AND<br>RECOMMENDATION |

Plaintiff Brooke A. Sund appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

### I.　　FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a thirty year old woman with a high school education. Administrative Record ("AR") at 39-40. Her past work experience includes employment in child care and as a teller at several credit unions or financial

---

[1] Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this suit. **The Clerk of Court is directed to update the docket accordingly, and the parties are ordered to update the caption on all future filings with the Court.**

REPORT AND RECOMMENDATION - 1

institutions. AR at 41. Plaintiff was last gainfully employed on a full-time basis as a bank teller in May 2007. AR at 41, 48.

On May 25, 2009, she filed an application for DIB, alleging an onset date of May 16, 2007. AR at 76-80. Plaintiff asserts that she is disabled due to fibromyalgia, depression, and anxiety. AR at 38. The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 81-83, 89-90. Plaintiff requested a hearing, which took place on January 18, 2011 in Portland, Oregon. AR at 35.

On April 4, 2011, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 11. Plaintiff's request for review was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On October 2, 2012, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

REPORT AND RECOMMENDATION - 2

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Sund bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

REPORT AND RECOMMENDATION - 3

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On April 4, 2011, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.

2. The claimant has not engaged in substantial gainful activity since May 16, 2007, the alleged onset date.

3. The claimant has the following severe impairments: fibromyalgia, anxiety, personality disorder, recurrent/moderate major depressive disorder, and alcohol abuse/dependence.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except the claimant is able to do simple routine tasks with no more than occasional superficial public interaction.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1981 and was 25 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[3]

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

8. The claimant has at least a high school education and is able to communicate in English.

9. The claimant has acquired work skills from past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 16, 2007, through the date of this decision.

AR at 16-25.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err by ignoring plaintiff's Motion to Subpoena the examining physician?

2. Did the ALJ err by relying upon an examining physician who had not reviewed the claimant's medical records?

3. Did the ALJ improperly reject the opinions of examining and treating medical providers?

4. Did the ALJ err by rejecting lay witness testimony?

5. Did the ALJ improperly discredit the claimant's testimony?

6. Did the ALJ err in her assessment of the claimant's residual functional capacity at Step Four?

7. Did the ALJ err in her analysis of whether the claimant's combined impairments met or equaled a listing?

8. Did the ALJ err by ignoring the vocational expert's opinion regarding available jobs in light of the claimant's limitations?

Dkt. 15 at 1-2; Dkt. 16 at 2.

REPORT AND RECOMMENDATION - 6

VII.   DISCUSSION

A.   <u>The ALJ Erred by Failing to Hold a Supplementary Hearing</u>

Following the administrative hearing, plaintiff attended a consultative psychological evaluation by Scott Alvord, Psy.D. on February 1, 2011 pursuant to an order of the ALJ.  AR at 230-41, 698-720.  Dr. Alvord diagnosed major depressive disorder, anxiety disorder, "rule out" prescription medication abuse/dependence, and personality disorder not otherwise specified, and assessed a Global Assessment of Functioning ("GAF") score of 45-55.[4]  AR at 705.  In the narrative portion of his report, Dr. Alvord opined that "[o]verall her adaptive functioning is considered moderately to severely impaired all things considered . . . exaggeration and possible substance abuse/dependence makes it very difficult to make a definitive diagnosis or statement regarding her occupational abilities.  Her prognosis is guarded/poor given Axis II traits and her lack of response to treatment in the past."  AR at 705.  Dr. Alvord further qualified his opinions by stating that his findings are "considered provisional at best given suspected poor motivation and possible exaggeration of memory complaints potentially exacerbated by prescription medicate (sic) abuse/dependence."  AR at 705.

On March 2, 2011, the ALJ sent a copy of Dr. Alvord's report to plaintiff's counsel, along with a letter advising plaintiff that new medical records had been added to the record.

---

[4] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).  A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning."  *Id.* at 34.  A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job.  *Id.*

REPORT AND RECOMMENDATION - 7

AR at 230-31.  In the letter, the ALJ notified plaintiff that she had the right to submit written comments concerning the evidence, a statement concerning the facts and law related to her case in light of the new evidence, and any additional medical records.  AR at 230.  The letter also advised plaintiff that she had a right to "request a supplemental hearing at which you would have the opportunity to appear, testify, produce witnesses, and submit additional evidence and written or oral statements concerning the facts and law."  AR at 230.  The letter promised that "*[i]f you request a supplemental hearing, I will grant the request unless I receive additional records that support a fully favorable decision*."  AR at 230 (emphasis added).  Plaintiff was further advised that she could "request an opportunity to question witnesses, including the author(s) of the enclosed report(s)," or ask that the ALJ "issue a subpoena to require the attendance of witnesses or that submission of records."  AR at 230.  The ALJ will issue such a subpoena if the ALJ considers it "reasonably necessary for the full presentation of the case."  AR at 230.  Finally, plaintiff was informed that if she did not respond to the letter within 10 days, the ALJ would assume that plaintiff did not wish to request a supplemental hearing or submit additional statements or evidence.  AR at 231.

On March 3, 2011, plaintiff's counsel submitted a motion requesting that "a favorable determination be issued" based upon Dr. Alvord's opinion, or alternatively, "that there be a supplemental hearing and that Scott T. Alvord, Psy.D., be subpoenaed to testify concerning his February 1, 2011 evaluation."  AR at 234-41.  Specifically, plaintiff requested "a reasonable opportunity to cross-examine Dr. Alvord to clarify his comments."  AR at 238.  Plaintiff's motion describes, at length, alleged inconsistencies and confusing statements in Dr. Alvord's report which "require further evaluation and cross-examination."  AR at 239.  The ALJ failed to acknowledge plaintiff's request or hold a supplementary hearing before issuing the

REPORT AND RECOMMENDATION - 8

unfavorable decision in this case, which assigned "great weight" to Dr. Alvord's opinions.  AR at 22.

Plaintiff contends that the ALJ erred by ignoring her motion to hold a supplemental hearing and subpoena Dr. Alvord, because the motion "sets forth facts that justify further cross-examination of the consultative physician and establish the need for such examination." Dkt. 15 at 4.  Specifically, plaintiff asserts that the ALJ relied on Dr. Alvord's report to find that plaintiff could engage in a series of work-like endeavors and that her functional level was higher than prior reports had indicated.  AR at 22.   Among other confusing aspects of his report, Dr. Alvord "diagnosed a GAF with a range of marked to moderate and offered no explanation.  He found prescription abuse when no treating sources had and when he did not have their treatment records to review."  AR at 705.  He also found her fibromyalgia to be, at least in part, "physically manifested anxiety and depression."  AR at 705.  Plaintiff asserts that although "only with cross examination can these multiple conflicts and different perspectives be resolved[,] [i]n this case the ALJ simply ignored the motion, made no ruling and then proceeded to rely on the report."  Dkt. 15 at 4.

Plaintiff contends that the Ninth Circuit has long held that the denial of a request to cross-examine an expert whose opinion was crucial to the ALJ's decision was an abuse of discretion.  *Id*. at 5 (citing *Solis v. Schweiker*, 719 F.2d 301 (9th Cir. 1983)).  Plaintiff further argues that here, as in *Solis*, plaintiff "availed herself of the right to request cross-examination of a source who was crucial to the ALJ's decision . . . due process, as well as the regulations, requires that when there is a post-hearing medical report that is internally inconsistent and there is a timely request for a subpoena, then the subpoena should be issued or due process is denied."  *Id*. at 5-6.

REPORT AND RECOMMENDATION - 9

The Commissioner responds that "the ALJ impliedly denied Plaintiff's request by not granting it prior to the date of the decision." Dkt. 16 at 2. In addition, the Commissioner contends that the ALJ has discretion to decide when cross-examination is warranted under the Ninth Circuit's decision in *Solis*, and an ALJ need not issue a requested subpoena unless "it is reasonably necessary for the full presentation of the case." *Id*. (citing 20 C.F.R. § 404.950(d)). The Commissioner asserts that unlike the physician's opinion at issue in *Solis*, "Dr. Alvord's opinion was not inconsistent with the opinion of any acceptable medical source. While Dr. Alvord was a crucial witness, his findings did not substantially contradict another physician's opinion. Therefore, the ALJ did not abuse her discretion in declining to subpoena Dr. Alvord for cross-examination." *Id.*

The Court agrees with plaintiff that the ALJ violated her statutory right to a supplementary hearing on the evidence obtained from Dr. Alvord. The Social Security Administration's regulations require that when new evidence is obtained following an administrative hearing, claimants are provided with notice as well as an opportunity to review and comment on the evidence:

> Opportunity to review and comment on evidence obtained or developed by us after the hearing. If, for any reason, additional evidence is obtained or developed by us after your disability hearing, and all evidence taken together can be used to support a reconsidered determination that is unfavorable to you with regard to the medical factors of eligibility, we will notify you, in writing, and give you an opportunity to review and comment on the additional evidence. You will be given 10 days from the date you receive our notice to submit your comments (in writing or, in appropriate cases, by telephone), unless there is good cause for granting you additional time, as illustrated by the examples in § 404.911(b). Your comments will be considered before a reconsidered determination is issued. If you believe that it is necessary to have further opportunity for a hearing with respect to the additional evidence, a supplementary hearing may be scheduled at your request. Otherwise, we will ask for your written comments on the additional evidence, or, in appropriate cases, for your telephone comments.

20 C.F.R. § 404.916(f). Similarly, the Hearing, Appeals and Litigation Law Manual ("HALLEX") I–2–7–30 provides that "[i]f the claimant requests a supplementary hearing, the ALJ must grant the request, unless the ALJ receives additional documentary evidence that supports a fully favorable decision."

Here, it is undisputed that plaintiff was provided with adequate notice of the additional evidence pursuant to 20 C.F.R. § 416.916(f). However, when plaintiff attempted to exercise her right to request a supplemental hearing on the new evidence obtained by the ALJ from Dr. Alvord, the ALJ failed to acknowledge the request. Instead, the ALJ relied heavily upon Dr. Alvord's report to issue an unfavorable decision, assigning his opinions "great weight because it is based on a thorough exam with objective testing he is a specialist in psychology." AR at 22. Under these circumstances, the undersigned finds that the ALJ's failure to comply with the agency's regulations by granting plaintiff's request for a supplementary hearing denied plaintiff's statutory right to address the medical evidence relied upon by the ALJ in denying plaintiff benefits. This matter must therefore be remanded for a supplemental hearing on this evidence.

In light of the fact that this matter must be remanded for the ALJ to hold a supplemental hearing, the Court declines to decide whether plaintiff is also entitled to cross-examine Dr. Alvord pursuant to the Ninth Circuit's decision in *Solis*. In that case, the ALJ sought the opinion of a sixth medical expert when the opinions of the first five conflicted over the probable duration of the claimant's disability. *Solis*, 719 F.2d at 302. The sixth medical expert concluded that the claimant had sufficient functional capacity to work, and the ALJ subsequently found the claimant ineligible for benefits. *Id*. The ALJ denied the claimant's request to cross-examine the medical expert, allowing only the submissions of interrogatories. The Ninth Circuit found the denial of the request to cross-examine the expert, whose opinions

REPORT AND RECOMMENDATION - 11

was crucial to the ALJ's decision, to be an abuse of discretion because such cross-examination was "required for a full and true disclosure of the facts." *Id*. (citing 5 U.S.C. § 556(d)).

The ALJ has discretion to decide when cross-examination is warranted. *Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir. 1988). "A claimant in a disability hearing is not entitled to unlimited cross-examination, but rather 'such cross-examination as may be required for a full and true disclosure of the facts.'" *Solis*, 719 F.2d at 302. An ALJ only abuses her discretion when she denies a claimant's request to cross-examine a medical course where that source's report is "crucial" to the ALJ's decision. *Solis*, 719 F.2d at 302.

In this case, the ALJ has never responded to plaintiff's arguments that Dr. Alvord's opinion was "crucial" to the ALJ's decision, and that his report contained conflicting test results and internally inconsistent findings. In fact, the ALJ may have been wholly unaware of plaintiff's motion, and therefore assumed that plaintiff did not wish to request a supplemental hearing or submit additional statements or evidence. AR at 231. As it is within the ALJ's discretion to determine whether a consultative physician's presence is required at a supplemental hearing, the Court declines to decide, in the first instance, whether cross-examination of Dr. Alvord is "required for full and true disclosure of the facts" in this case.[5]

Accordingly, this matter must be remanded for further proceedings to provide plaintiff an opportunity to address the additional medical evidence obtained by the ALJ from Dr. Alvord. If the ALJ declines to grant plaintiff's request to subpoena Dr. Alvord at the supplemental hearing, the ALJ shall explain why Dr. Alvord's opinions cannot be considered

---

[5] The Court does note, however, that although the Commissioner contends that Dr. Alvord's opinion "was not inconsistent with the opinion of any acceptable medical source" and should be distinguished from the medical opinions at issue in *Solis* on that basis, the Commissioner also concedes that "Dr. Alvord was a crucial witness" in this case. Dkt. 16 at 3.

REPORT AND RECOMMENDATION - 12

"crucial" to the ALJ's decision in this matter, and why cross-examination is not necessary for "a full and true disclosure of the facts" in this case. *See Solis*, 719 F.2d at 302.[6]

### VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 9th day of July, 2012.

JAMES P. DONOHUE
United States Magistrate Judge

---

[6] As this matter must be remanded for further proceedings on the ground that the ALJ denied plaintiff's right to a full and fair proceeding, the undersigned declines to address plaintiff's additional assignments of error.